IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re ALEX KADAR and BRIGITTE KADAR,<br><br>Debtors. | Chapter 13<br><br>Case No.:   2:11-bk-21421-SSC<br><br>Adversary No.: 2:11-ap-01959-SSC<br>(Not for Publication- Electronic Docketing ONLY) |
| ALEX KADAR and BRIGITTE KADAR,<br><br>Plaintiffs,<br>v.<br><br>LEHMAN BROTHERS BANK, FSB, LEHMAN BROTHERS HOLDINGS, INC., AURORA LOAN SERVICES, LLC, AURORA BANK, FSB, and U.S. BANK, N.A.,<br><br>Defendants. | MEMORANDUM DECISION |

I. PRELIMINARY STATEMENT

On July 11, 2012, this Court conducted a continued hearing on the "Motion to

1

Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted, Or, In The Alternative, For Summary Judgment" filed by Defendants herein. At that hearing, the Court ordered Defendants to file supplemental information, and provided Plaintiffs a deadline to file an objection thereto or to dismiss voluntarily this proceeding. Defendants filed the requested information, and Plaintiffs filed an objection within the deadline allotted, as more fully set forth below. The Court has now set forth, in this memorandum decision, its findings of fact and conclusions of law. Fed.R. Bankr.P. 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§1334 and 157 (West 2012).

## II. FACTUAL DISCUSSION

On or about June 5, 2007, Alex and Brigitte Kadar, the Debtors herein, executed a promissory note ("Note") in the original principal amount of $475,000 in favor of Lehman Brothers Bank, FSB.[1] On the same date, the Debtors, as trustors, also executed a deed of trust ("Deed of Trust") on the property located at 22919 North 85th Avenue, Peoria, Arizona 85383 ("Property"), which secured the Note, and stated that Lehman Brothers Bank, FSB, was the lender ("Lender") thereunder.[2] The Mortgage Electronic Registration Systems, Inc., as nominee for the Lender, ("MERS") was named as the beneficiary ("Beneficiary").[3] The Property was, and continues to be, the Debtors' residence. The Debtors subsequently defaulted on their obligations under the Note and the Deed of Trust.

On March 16, 2011, MERS, as nominee for the Lender, executed a Corporate Assignment of Deed of Trust ("Assignment").[4] Through the Assignment, MERS assigned the

---

**1.** Defendants' Request for Judicial Notice, Docket Entry No. 15, Exhibit A.

**2.** Id. at Exhibit B.

**3.** Id.

**4.** Id. at Exhibit C. A Corporate Assignment of Deed of Trust was originally filed on September 16, 2010, and recorded on October 12, 2010. The March 16, 2011, Corporate

2

beneficial interest in the Deed of Trust to Aurora Loan Services, LLC. The Assignment was apparently recorded at or around that time.[5]

On September 17, 2010, a Substitution of Trustee was executed by "Yvonne J. Wheeler, Asst. Sec." of MERS, naming Cal-Western Reconveyance Corporation ("Cal-Western") as substitute trustee under the Deed of Trust.[6] On March 25, 2011, Cal-Western, acting as the successor trustee under the Deed of Trust, executed and recorded a Notice of Trustee's Sale on the Property at No. 20110256694 in the Maricopa County Records, providing notice that a trustee's sale of the Property would occur on June 24, 2011.[7]

On July 20, 2011, Plaintiff filed a complaint in the Maricopa County Superior Court against, among others, the Lender, Cal-Western, Aurora Loan Services, LLC, Aurora Bank, FSB, and U.S. Bank, NA.[8] The complaint sought declaratory and injunctive relief, sought to quiet title to the Property, and alleged various other counts ranging from breach of contract to fraud. Debtors eventually dismissed the state court action on November 15, 2011.[9]

On July 27, 2011, the Debtors filed a voluntary bankruptcy petition under Chapter 13 of the Bankruptcy Code. Their bankruptcy was assigned case no. 2:11-bk-21421-SSC.

---

Assignment of Deed of Trust was, by its terms, executed to correct an error on the September 16, 2010, Corporate Assignment of Deed of Trust.

**5.** Id. at Exhibit D. The copy of the Assignment of Deed of Trust provided was an unofficial copy, so the date of recordation is not provided. However, Plaintiffs have not alleged that the Assignment was not recorded, so the Court presumes that the Assignment was recorded in a timely manner.

**6.** Docket Entry No. 15, Exhibit D.

**7.** Id. at Exhibit E.

**8.** Id. at Exhibit F. It is unclear why the trustee's sale scheduled for June 24, 2011, did not occur on that date.

**9.** Id. at Exhibit G.

3

On August 29, 2011, Aurora Loan Services, LLC, filed a proof of claim with copies of the Note, Deed of Trust, and Corporate Assignment of Deed of Trust attached as supporting documentation for its claim.[10]

On October 25, 2011, Debtors filed the instant Adversary Proceeding, naming the Lender, Lehman Brothers Holdings, Inc., Aurora Loan Services, LLC, Aurora Bank, FSB, and U.S. Bank, NA as defendants therein ("Defendants").[11] The Amended Complaint alleges that the Defendants are not holders of the Note or persons entitled to enforce the Note as those concepts are defined in Article 3 of the UCC, that Defendants are not real parties in interest or beneficiaries under the Deed of Trust, and that because of the foregoing, any related liens on the Property are no longer enforceable.[12] Subsequently, Debtors have asserted that the instant Adversary is essentially an objection to the Aurora Loan Services, LLC, proof of claim brought by adversary proceeding rather than by written objection in the Debtors' administrative case.[13]

On November 28, 2011, in response to the Amended Complaint, Defendants filed a Motion to Dismiss, or in the alternative Motion for Summary Judgment ("Motion") and an accompanying Request for Judicial Notice.[14] Defendants also filed supporting declarations of two Aurora Bank employees, Elizabeth Santoro and Janette Chappell.[15] The Motion argued,

---

**10.** Id. at Exhibit J.

**11.** See Amended Complaint, Docket Entry No. 6. The Amended Complaint also lists as defendants John Does I-III, Jane Does I-III, Black Corporations I-III, and XYZ Partnerships I-III. See Id. at p. 1. However, Plaintiffs have never specified additional defendants or supplemented the record to reflect the existence of additional defendants.

**12.** Id. at p. 6, ln. 18-26, p. 7, ln. 1-3.

**13.** Docket Entry No. 27, p. 2, ln. 12-16.

**14.** See Docket Entry Nos. 14, 15.

**15.** See Docket Entry Nos. 17, 18.

4

Case 2:11-ap-01959-SSC    Doc 45    Filed 11/05/12    Entered 11/05/12 12:03:00    Desc
Main Document    Page 4 of 20

among other things, that Plaintiffs failed to set forth sufficient factual support for their objection to the standing and authority of Aurora Loan Services, LLC to file a proof of claim.[16] The Declarations set forth that U.S. Bank, N.A., is the current owner of the underlying loan evidenced by the Note and Deed of Trust,[17] that Aurora Loan Services, LLC, is the servicer of the loan,[18] and that Aurora Loan Services, LLC, is in possession of the Note.[19]

On January 29, 2012, Plaintiffs filed a Response to the Motion.[20] In the Response, Plaintiffs claimed that Aurora Loan Services, LLC lacked standing and authority to file a proof of claim because it could not establish that it was the holder of the Note or that it had the right to enforce the Note. Defendants filed a Reply on January 23, 2012, arguing that the proof of claim was entitled to the presumption of validity set forth in Bankruptcy Rule 3001(f), and that Aurora Loan Services, LLC was the holder of the Note under Arizona law, and thus, had standing to file the proof of claim.

On April 17, 2012, the Court held a hearing on the Defendants' Motion. At that hearing, the Court ordered the Defendants to submit an additional declaration showing that Aurora Loan Services, LLC had possession of the Note and authority to file the proof of claim. On April 27, 2012, Defendants filed the Declaration of Jamin S. Neil, counsel for the Defendants.[21] The

---

**16.** See Docket Entry No. 14.

**17.** See Docket Entry No. 17, p. 2, ln. 17-18.

**18.** Id. at p. 1, ln. 25.

**19.** See Docket Entry No. 18, p. 2, ln. 1-4.

**20.** See Response to Motion/Application to Dismiss, Docket Entry No. 27. The Response was filed late pursuant to Local Rule 9013-1. Plaintiffs filed a Motion to Allow Late Filing of Response on January 31, 2012, claiming that they served a copy of the Response on Defendants on December 12, 2011, but that the Response was not docketed at that time because of confusion with responses filed on the same date in other cases.

**21.** Declaration of Jamin S. Neil, Docket Entry No. 33.

Declaration of Mr. Neil sets forth that Aurora Loan Services, LLC, was in possession of the original Note, and that on January 23, 2012, the control department of Aurora Loan Services, LLC, sent the original Note to Mr. Neil's office and that Mr. Neil was in possession of the original Note as of January 24, 2012.[22]

On May 4, 2012, Plaintiffs filed a Supplemental Response to the Motion.[23] Rather than responding to the Declaration of Mr. Neil, the Supplemental Response continues to raise arguments as to the authority and standing of Aurora Loan Services, LLC. The Supplemental Response also argues extensively about the proper burden of proof in the claims adjudication process when a debtor challenges a claimant's standing.[24]

On May 23, 2012, the Court held a continued hearing on the Motion.[25] Mr. Neil brought the original Note to the hearing. In spite of this, counsel for the Plaintiffs continued to question the standing and authority of Aurora Loan Services, LLC, to file a proof of claim. Based on the continued arguments of counsel for the Plaintiffs, the Court directed counsel for the Defendants to file a Declaration setting forth the servicing agreement under which Aurora Loan Services, LLC, was given authority as servicer to file the proof of claim, and that Aurora Loan Services, LLC, had possession of the original Note at the time the proof of claim was filed.[26]

---

**22.** Id. at p. 2-3.

**23.** See Supplemental Response to Motion/Application to Dismiss/Motion For Summary Judgment, Docket Entry No. 34.

**24.** See Id.

**25.** See Docket Entry No. 35.

**26.** See May 23, 2012, Minute Entry, Docket Entry No. 35.

On July 2, 2012, in response to the Court's request, Defendants filed a Supplemental Request for Judicial Notice, and a Supplemental Declaration of Regina Lashly, Senior Vice President of Aurora Bank, FSB.[27] Attached to the Supplemental Request for Judicial Notice are relevant portions of a Trust Agreement dated as of July 1, 2007.[28] The Trust Agreement names Aurora Loan Services, LLC, as master servicer.[29] The Trust Agreement grants Aurora Loan Services, LLC, "full power and authority . . . to do any and all things that it may deem necessary or desirable in connection with the servicing and administration of the Mortgage Loans . . . ."[30] The Trust Agreement further directs Aurora Loan Services, LLC, to "represent and protect the interests of the Trust Fund in the same manner as it protects its own interests in mortgage loans in its own portfolio in any claim, proceeding or litigation regarding a Mortgage Loan . . . ."[31] Finally, the Trust Agreement grants Aurora Loan Services, LLC the authority to terminate its role as servicer and "provide for the servicing of the Mortgage Loans by a successor Servicer . . . ."[32]

In the Supplemental Declaration of Ms. Lashly, she asserts that Aurora Loan Services, LLC, took possession of the original Note on or about January 18, 2011.[33] She further states that on or about July 21, 2011, Aurora Loan Services, LLC, entered into a subservicing agreement with Aurora Bank, FSB, through which Aurora Bank, FSB, agreed to subservice the

---

**27.** Docket Entry Nos. 36, 37.

**28.** Docket Entry No. 36, Exhibit A.

**29.** Id. at p. 215.

**30.** Id. at p. 216, Section 9.04(a).

**31.** Id. at p. 217.

**32.** Id. at p. 220, Section 9.07(a).

**33.** Docket Entry No. 37, p. 2, ln. 17-18.

7

loan in question on behalf of Aurora Loan Services, LLC. In connection with this agreement Aurora Loan Services, LLC, transferred the original Note to Aurora Bank, FSB, and authorized the bank to hold the original Note and retain possession thereof as an agent for and bailee of Aurora Loan Services, LLC.[34] She alleges that the original Note remained in possession of Aurora Loan Services, LLC, either directly or through its subservicer Aurora Bank, FSB, until January 23, 2012, at which time the original Note was transferred to Mr. Neil as outlined above.[35]

On July 11, 2012, the Court held yet another continued hearing on the Defendants' Motion.[36] At that hearing, the Court found as a matter of fact and law that Aurora Loan Services, LLC, had standing and authority to file a proof of claim, and that the proof of claim was entitled to the presumption of validity contained in Bankruptcy Rule 3001(f).[37] However, the Court ordered counsel for the Defendants to submit one final declaration to establish that Aurora Loan Services, LLC, was appointed as master servicer at the time the loan documents were executed, and that the loan was actually placed in the underlying trust for which the Trust Agreement referenced above was executed.[38] The Court gave Defendants until July 25, 2012, to file this information, and gave Plaintiffs until August 1, 2012, to either respond or voluntarily dismiss this Adversary.[39]

On July 24, 2012, Defendants filed the Declaration of Nationstar Mortgage in Support of Motion to Dismiss Complaint for Failure to State A Claim Upon Which Relief Can Be Granted Or, In the Alternative, For Summary Judgment, executed by one Hugh Zhao, as assistant

---

**34.** Id. at p. 2, ln. 19-24.

**35.** Id. at p. 3, ln. 2-5.

**36.** See Docket Entry No. 39.

**37.** See July 11, 2012, Minute Entry, Docket Entry No. 39.

**38.** Id.

**39.** Id.

8

secretary of Nationstar Mortgage ("Nationstar Declaration").[40]   The Nationstar Declaration provides that on or around July 1, 2012, Nationstar acquired the contractual right and responsibility to service the Loan.[41]   No documentation evidencing the assignment of the Loan servicing rights from Aurora to Nationstar was provided.

The Nationstar Declaration attaches all the underlying documentation related to the transfer of various mortgage loans into the Trust referenced above, as well as the designation of U.S. Bank as Trustee of that Trust.   Specifically, the Nationstar Declaration includes an Assumption and Assignment Agreement between the Lender and Lehman Brothers Holdings, Inc. ("Lehman Holdings"), dated July 1, 2007 ("Lehman Agreement"), through which the Lender transferred to Lehman Holdings all its rights in certain mortgage loans including Plaintiffs' Loan.[42]   To provide additional evidence of this transfer, the Nationstar Declaration attached the underlying Note, which contains a special endorsement from the Lender to Lehman Holdings.[43] The Nationstar Declaration also includes a Mortgage Loan Sale and Assignment Agreement entered into between Lehman Holdings and Structured Asset Securities Corporation ("SASC") on July 1, 2007 (the "SASC Agreement"), through which Lehman Holdings transferred to SASC all its rights in the same group of mortgage loans referenced in the Lehman Agreement, including Plaintiffs' Loan.[44]   Again, the underlying Note provides additional evidence of this transfer as it contains an endorsement in blank executed by Lehman Holdings.[45]   Additionally, the Nationstar

---

**40.** See Docket Entry No. 40.

**41.** See Id. at p. 2, ln. 11-12.

**42.** See Id. at Exhibit C, Exhibit F.

**43.** See Id. at Exhibit A.

**44.** See Id. at Exhibit D, Exhibit F.

**45.** See Id. at Exhibit A.

Declaration attaches the same Trust Agreement mentioned above, also dated July 1, 2007, and entered into between SASC as Depositor, Aurora Loan Services, LLC, as Master Servicer, and U.S. Bank as Trustee.[46] Through the Trust Agreement, SASC transfers to U.S. Bank in trust all its rights in the same group of mortgage loans referenced in the SASC Agreement, including Plaintiffs' Loan.[47] Finally, the Nationstar Declaration alleges that Plaintiffs' Loan was included in the Trust referenced above.[48] As support for this assertion, the Nationstar Declaration attaches as Exhibit F a list of mortgage loans placed into the Trust; Plaintiffs' Loan is included on that list.[49]

A review of the documentation attached to the Nationstar Declaration reveals that the various transactions described above were all executed as part of one overarching transaction: the creation of the Trust. In the recitals of each of the various agreements, the other agreements are referenced and acknowledged.[50] It is clear that all the Defendants contemplated the transfers of the group of mortgage loans, and the creation of the Trust with U.S. Bank as Trustee and Aurora Loan Services, LLC, as Master Servicer.[51]

On August 1, 2012, Plaintiffs filed an objection to the Nationstar Declaration.[52] In the objection, the Plaintiffs raise two concerns with the Nationstar Declaration. First, Plaintiffs contend that Nationstar Mortgage failed to provide any evidence of its standing to appear in this

---

**46.** See Id. at Exhibit E.

**47.** See Id., see also Exhibit F.

**48.** See Id. at p. 2, ln. 4-7.

**49.** See Id. at Exhibit F, p. 100.

**50.** See Id. at Exhibits C, D, E, recitals sections.

**51.** See Id.

**52.** Docket Entry No. 42. Plaintiffs filed an objection at Docket Entry No. 41, but later filed an amended objection to add to the original.

case or to contest Plaintiffs' objection to the proof of claim filed by Aurora Loan Servicing, LLC.[53] Second, Plaintiffs contend that SASC never executed a valid endorsement of the Note to U.S. Bank, that because of this failure U.S. Bank never took title to the Note, and that, therefore, neither Aurora Loan Servicing, LLC, nor Nationstar Mortgage, obtained authority to file the proof of claim in question.[54] The Court has further reviewed all the proceedings and documents filed in this matter, and must dismiss Plaintiffs' Amended Complaint with prejudice. Therefore, Plaintiffs' objection to the proof of claim filed by Aurora Loan Services, LLC, is overruled for the reasons more fully explained herein.

## III. DISCUSSION

Plaintiffs continue to assert that Defendants have the burden of proving the standing of Aurora Loan Servicing, LLC and/or Nationstar Mortgage to file the proof of claim, but at this point in the case they do so on relatively narrow grounds. Based on their most recent objection, it appears that Plaintiffs no longer dispute that U.S. Bank is Trustee of the Trust described herein and that Aurora Loan Services, LLC, is the Master Servicer of that Trust. It also appears that Plaintiffs do not dispute that the underlying Loan was intended by U.S. Bank, SASC, and Aurora Loan Services, LLC, to be placed in the Trust and that it was, in fact, placed in the Trust. Plaintiffs' only remaining contentions are that the Note was not properly endorsed (and that, therefore, U.S. Bank never acquired title to the Note), and that Nationstar Mortgage has not established its servicing rights. The Court addresses these issues, seriatim, beginning with an analysis of the burden of proof in the claims process.

---

**53.** Id. at p. 2.

**54.** Id. at p. 5. This argument centers on Section 2.01(b) of the Trust Agreement, which specifies that SASC, with respect to each mortgage loan contained in the Trust, has or will deliver to U.S. Bank each "original Mortgage Note endorsed without recourse in proper form to the order of the Trustee, as shown on Exhibit B-4, **or in blank (in each case, with all necessary intervening endorsements, as applicable)** . . . ." (emphasis added).

11

### 1. The Burden of Proof in Claims Adjudication

Procedures governing the filing of proofs of claim are set forth in the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.[55] Section 501 provides that a creditor may file a proof of claim. Rule 3001 contains additional details regarding information a proof of claim should contain. For example, Rule 3001(c)(1) provides that if a claim is based on a writing, either an original or a duplicate of the writing must be attached to the proof of claim. If such a claim is filed in the bankruptcy case of an individual debtor, the creditor must provide additional information to support its request for interest or other fees and/or its alleged security interest in the debtor's property. See Rule 3001(c)(2).

Rule 3001(f) provides that if a creditor or its authorized agent executes and files a proof of claim in compliance with the Rules, the proof of claim "shall constitute prima facie evidence of the validity and amount of the claim." Further, Section 502(a) provides that a claim filed under Section 501 is deemed allowed unless a party in interest objects. These provisions create an evidentiary presumption in favor of the claimant which may be rebutted only if an objecting party presents sufficient countervailing evidence to rebut it. See In re Southern California Plastics, Inc., 165 F.3d 1243, 1248 (9th Cir. 1999) citing 4 Collier on Bankruptcy at ¶ 502.02[2] (15th ed. 1998). Thus, although the claimant bears the ultimate burden of persuasion in the claims adjudication setting, the evidentiary presumption in Rule 3001(f) constitutes prima facie evidence of the claim unless rebutted. See In re Garvida, 347 B.R. 697, 707 (9th Cir. BAP (Wash.) 2006) ("The proof of claim is more than 'some' evidence; it is, unless rebutted, 'prima facie' evidence. One rebuts evidence with counter-evidence.") citing In re Garner, 246 B.R. 617, 621 (9th Cir. BAP (Cal.) 2000).

---

**55.** Unless otherwise provided, all references to "Section" herein shall refer to sections of Title 11 of the United States Code, and all references to "Rule" herein shall refer to the Federal Rules of Bankruptcy Procedure.

12

Despite the evidentiary presumption set forth in Rule 3001(f), if as part of an objection to proof of claim the debtor affirmatively challenges a claimant's standing, that claimant must present at least some evidence to support its standing to proceed with the proof of claim. See Veal v. American Home Mortgage Servicing, Inc. (In re Veal), 450 B.R. 897, 918 (9th Cir. BAP 2011) (finding that when plaintiffs affirmatively challenged servicer's standing to file proof of claim as agent for beneficial owner of note, servicer's failure to present any evidence of its servicing authority was fatal to its claim). Thus, the Plaintiffs correctly assert that U.S. Bank, as the claimant, should provide some evidence in support of its ability to proceed with its proof of claim.

For purposes of the Plaintiffs' objection, U.S. Bank must show both constitutional and prudential standing. Constitutional standing "requires an injury in fact, which is caused by or fairly traceable to some conduct or some statutory prohibition, and which the requested relief will likely redress." Veal, 450 B.R. at 908 (citations omitted). To meet this test, there must be an "injury in fact, causation, and redressability." Id. Prudential standing "embodies judicially self-imposed limits on the exercise of federal jurisdiction." Veal, 450 B.R. at 906 (citations omitted). This helps ensure that a party asserts "its own legal rights and may not assert the legal rights of others." Id. at 907.

In this particular matter, U.S. Bank has not received the requisite payments due and owing under the Note.[56] The Plaintiffs, however, have continued to reside at the Property. U.S. Bank has shown injury in fact. Next, because U.S. Bank has not been provided for in the Plaintiffs' Chapter 13 plan, and has been precluded as a result of the automatic stay from

---

**56.** The Plaintiffs commenced this adversary in 2011, challenging the proof of claim filed by U.S. Bank. As a result, they have presumably failed to make any postpetition payments, or provide for the cure of any prepetition arrearages in their plan of reorganization, concerning the loan on their residence..

13

proceeding with its rights and remedies under Arizona law, U.S. Bank has shown causation. Finally, once this Court resolves the standing issue, U.S. Bank will be entitled to receive payments on the Note, both on a current basis, and pursuant to the Plaintiffs' plan of reorganization.   The issue of redressability will be resolved.

U.S. Bank has filed a proof of claim with this Court, through its servicer, to ensure that postpetition payments will be made in a timely manner and that any prepetition arrearages under the Note will be cured in, and paid through, the Plaintiffs' Chapter 13 Plan. The Bankruptcy Court must assure secured creditors that have only a lien on the debtors' principal residence that said secured creditors are paid in a manner consistent with the Bankruptcy Code Section 1326 to confirm a debtor's plan. In this matter, U.S. Bank is entitled to these rights as a secured creditor.   Based upon the foregoing, U.S. Bank has both constitutional and prudential standing.

In <u>Veal</u>, the BAP reversed the bankruptcy court's allowance of AHMSI's proof of claim[57] because, even after the debtors affirmatively challenged AHMSI's standing, AHMSI failed to present any evidence to support the assertion in its proof of claim that it acted as authorized agent of alleged note holder Wells Fargo. <u>Id.</u> at 919-921.   The BAP stated that neither Wells Fargo nor AHMSI provided any testimony, by declaration or otherwise, as to possession or valid endorsement of the underlying note, which was necessary in order to show that Wells Fargo was the entity entitled to enforce the note. <u>Id.</u> at 920-21.   As servicer, AHMSI also needed to present evidence of its agency relationship with Wells Fargo. <u>Id.</u> at 921.   The BAP determined that these failures "should have been fatal" to AHMSI's claim. <u>Id.</u> at 919.

In the case at hand, Plaintiffs have challenged the standing of Aurora Loan Servicing, LLC, to file a proof of claim in Plaintiffs' current bankruptcy case.   Defendants have

---

**57.** AHSMI alleged that it filed the proof of claim as servicer for Wells Fargo.

responded to these arguments in a manner very different from the defendant servicer in <u>Veal</u>. In this matter, U.S. Bank and the other Defendants have presented documentary evidence showing, step-by-step, the process by which Aurora Loan Services, LLC acquired its standing to file the proof of claim as servicer for U.S. Bank, the beneficial owner of the Note.   As set forth above, Defendants presented copies of the Note, and showed that Aurora Loan Services, LLC was in possession of the original Note at the time the proof of claim was filed.   The Defendants also provided evidence that the Note was properly endorsed.[58]   The Defendants presented extensive declarations with attached assignments and agreements which established the transfer and possession of the Note and its placement in the Trust.   The transfers of ownership in the Note from the Lender to Lehman Holdings, from Lehman Holdings to SASD, and from SASD to U.S. Bank all evince the intention of the parties to place the Note in the Trust.   The Defendants also presented evidence of the establishment of the servicing rights of Aurora Loan Services, LLC for U.S. Bank, which included the right to substitute another servicer in its place.

In short, in contrast to the servicer in <u>Veal</u>, the Defendants herein have presented extensive documentation to support the authority of Aurora Loan Services, LLC to file the instant proof of claim.   The Plaintiffs contend that despite this extensive documentation, an additional endorsement on the Note was required in order for U.S. Bank to acquire title thereto, and that, therefore, U.S. Bank could not authorize Aurora Loan Services, LLC, to file a proof of claim as to the Note.   The Court finds that Plaintiffs are incorrect, as set forth below.

---

**58.** The propriety of the endorsements on the Note is discussed more fully in Section 2, infra.

15

1          2. An Endorsement from SASC to U.S. Bank Was Not Required.

2          The Plaintiffs contend that Section 2.01 of the Trust Agreement requires either a special endorsement from SASC to U.S. Bank, or an intervening endorsement for every transfer, and that since no such endorsement is present on the Note, U.S. Bank never acquired title thereto and could not authorize Aurora Loan Services, LLC, to file a proof of claim based on the Note. The Plaintiffs are incorrect, and have misread both the Trust Agreement and the requirements of Arizona law.

Returning to the relevant language in the Trust Agreement, SASC warrants that it has or will deliver the Plaintiffs' Note (and any other notes in the mortgage pool) to Trustee U.S. Bank "endorsed without recourse in proper form to the order of the Trustee, as shown on Exhibit B-4, **or in blank (in each case, with all necessary intervening endorsements, as applicable)** . . . ." (emphasis added).   The Plaintiffs ask this Court to interpret this language as requiring an endorsement executed by SASC in order for title in the Note to pass to U.S. Bank as Trustee. However, the Court does not read this language as requiring such an endorsement in the case of each individual Note.   The Plaintiffs ignore the highlighted language related to endorsements in blank, especially the words "all necessary" and the words "as applicable."   In other words, the Court does not read the Trust Agreement as requiring an intervening endorsement in blank in every case.   Rather, the Trust Agreement may reasonably be read as requiring intervening endorsements only when such an endorsement would be either "necessary" or "applicable" under governing law.

Since the Note was executed in Arizona, and the underlying real property securing repayment of the Note is located in Arizona, in the absence of an agreement to the contrary, the Court concludes that Arizona law governs.   Neither party has argued that the law of another state should apply, and the Note does not contain a choice of law provision.   Therefore, the question of whether an intervening endorsement was required to pass title to, or ownership of the underlying Note to U.S. Bank must be examined under Arizona law.

Arizona has adopted Article 3 of the Uniform Commercial Code ("UCC") through Title 47 of Arizona Revised Statutes ("A.R.S."). A.R.S. § 47-3101 *et seq.*, sets forth legal rules relating to the transfer and payment of "negotiable instruments." The term "negotiable instrument" is defined in A.R.S. § 47-3104(A) as (1) "an unconditional promise or order to pay a fixed amount of money" as long as it is "payable to bearer or to order" (A.R.S. § 47-3104(A)(1)); (2) is payable "on demand or at a definite time" (A.R.S. § 47-3104(A)(2)); and (3) does not require additional unrelated actions by the parties (A.R.S. § 47-3104(A)(3)).[59] Both Plaintiffs executed the Note. By so doing, the Plaintiffs promised to pay the Lender $475,000, with interest, in full, no later than July 1, 2037. The Note was payable to the order of the Lender. No further action was required by the parties. Applying this definition to the case at hand, the Court finds that the Note is a negotiable instrument.

Because the Note is a negotiable instrument, Article 3 of the UCC controls. Pursuant thereto, "negotiation" of an instrument "means a transfer of possession . . . of an instrument by a person other than the issuer to a person who thereby becomes its holder." A.R.S. § 47-3201(A). In the context of negotiable instruments, a "holder" is defined as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." A.R.S. § 47-1201(B)(21).

It should be noted that not every transfer of an instrument constitutes a negotiation. Indeed, A.R.S. § 47-3203(A) provides that "[a]n instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." Thus, every negotiation is a transfer, but a transfer is only a negotiation if the party to whom the instrument is delivered becomes its holder. However, even if a transfer of an instrument does not constitute a negotiation, it still "vests in the

---

**59.** This provision does contain three exceptions to this requirement, none of which are relevant in this case. See A.R.S. § 47-3201(A)(3)(a)-(c).

17

transferee any right of the transferor to enforce the instrument . . . ." A.R.S. § 47-3203(B).

An endorsement is defined generally in § 47-3204(A) as a signature. Pursuant to A.R.S. § 47-3206(A), if an endorsement made by the instrument's holder identifies a person to whom it is payable, it is labeled a special endorsement. Once an instrument has been specially endorsed, it may only be negotiated by the subsequent endorsement of the person to whom it is payable. Id. Here, when the Lender endorsed the Note it included the words "Pay To The Order Of Lehman Brothers Holding Inc Without Recourse." Under Arizona law, this was a special endorsement, meaning that only Lehman Holdings could later endorse the Note for transfer to another party.

Lehman Holdings did subsequently endorse the Note. However, the endorsement made by Lehman Holdings was not a special endorsement, but rather an endorsement in blank. A.R.S. § 47-3206 (B) defines, authorizes, and provides rules for the transfer of an instrument endorsed in blank: "[i]f an endorsement is made by the holder of an instrument and it is not a special endorsement, it is a 'blank endorsement.' When indorsed in blank, an instrument becomes payable to bearer **and may be negotiated by transfer of possession alone until specially indorsed**." (emphasis added); see also A.R.S. § 47-3201(B) ("If an instrument is payable to bearer, it may be negotiated by transfer of possession alone."). In contrast, an instrument that is payable to an identified person may only be negotiated through both transfer of possession AND endorsement by the instrument's holder. A.R.S. § 47-3201(B).

As mentioned above, the underlying Note in this case contains two endorsements. The first is a special endorsement from the Lender to Lehman Holdings. By endorsing the Note to Lehman Holdings, and transferring possession of the Note to Lehman Holdings, the Lender negotiated the Note and Lehman Holdings acquired the right to enforce it. Once Lehman Holdings had this right, it was free to transfer the Note to either the order of a specified party, or to bearer. Lehman Holdings chose to execute a blank endorsement by executing the second

18

1  endorsement on the Note.   The endorsement states "PAY TO THE ORDER OF" but does not list
2  a specified person to whom the instrument was to be payable.   Because the payee line was left
3  blank, the endorsement was a blank endorsement, and the Note became payable to bearer.
4  Lehman Holdings then transferred the Note to SASB and expressed its intent in the SASB
5  Agreement to grant SASB all of the rights of title or ownership of Lehman Holdings in the Note.
6          The Plaintiffs mistakenly contend that SASB was required to execute an additional
7  endorsement in order to transfer title or ownership in the Note to U.S. Bank.   However, Arizona
8  law clearly provides that once an instrument is payable to bearer, it may be subsequently
9  negotiated through transfer of possession alone.   When SASB agreed to transfer the Note to U.S.
10 Bank as Trustee, it stated its intent to grant to U.S. Bank all of its rights in the Note.   SASB
11 subsequently transferred possession of the Note to U.S. Bank.[60]   By transferring possession of the
12 Note to U.S. Bank, a transfer of the Note occurred and U.S. Bank gained all the authority of SASB
13 to enforce the instrument.   Since U.S. Bank obtained the right to enforce the instrument from the
14 holder of the Note, SASB, U.S. Bank properly authorized Aurora Loan Servicing, LLC, as Master
15 Servicer, to file the proof of claim in the Plaintiffs' current bankruptcy.

            3. Nationstar Mortgage Can Establish Its Authority By Amending the Proof of
               Claim.

            As mentioned above, the Trust Agreement provides that subsequent servicers may
be appointed.   The 2012 transfer of servicing or sub-servicing rights from Aurora Loan
Servicing, LLC, to Nationstar Mortgage is consistent with this provision, and does not alter the
substantive effect of the proof of claim, since the beneficial owner of the Note has not changed
since it was originally filed.   Nationstar may file an amended proof of claim to reflect its current

---

**60.** As mentioned above, Aurora Loan Services, LLC held the Note as Master Servicer for U.S. Bank pursuant to the Trust Agreement, and the Defendants established that Aurora Loan Services, LLC was in possession of the Note at the time it filed the proof of claim.

status as the servicer of the loan on behalf of U.S. Bank.

## IV. CONCLUSION

For the reasons stated in this decision, the Court finds as a matter of fact and law that the Defendants have established the authority of Aurora Loan Servicing, LLC to file the proof of claim in Plaintiffs' current bankruptcy case. Nationstar shall file an amended proof of claim to reflect its current status as the servicer of the loan on behalf of U.S. Bank. Given the posture of this adversary proceeding, the Court sees no basis to accord any relief to the Plaintiffs. Therefore, the Defendants' Motion to Dismiss is granted with prejudice. The Defendants are directed to lodge a form of order dismissing this adversary proceeding that is consistent with this decision.

DATED this 5th day of November, 2012.

*[signature]*

Honorable Sarah Sharer Curley
United States Bankruptcy Judge